**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

ALEEA PROCTOR,                          *

     Plaintiff,                         *

v.                                                    *          Case No.: PWG-17-113

WELLS FARGO BANK, N.A., *et al.*,   *

     Defendants.                      *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

On September 13, 2007, Plaintiff Aleea Proctor obtained a $126,889.98 mortgage loan

secured by the real property she purchased at 2066 Shadyside Avenue, Suitland, Maryland 20746

(the "Property"). Am. Compl. ¶¶ 20–21, ECF No. 20.  After a foreclosure action was initiated

against Proctor in the Circuit Court for Prince George's County, Case No. CAEF15-00209 (the

"Foreclosure Action"), *id*. ¶ 31, resulting in the sale of the Property and a state court Order of

Judgment awarding possession of the Property to Defendant Federal National Mortgage

Association ("Fannie Mae"), Proctor filed suit in this Court.[1]  ECF No. 1.  In addition to Fannie

Mae, Defendants include Wells Fargo, N.A. ("Wells Fargo," and together with Fannie Mae, the

"Lenders"); the "Substitute Trustees" who initiated the Foreclosure Action (Howard N. Bierman,

Joshua Coleman, Nicholas Derdock, Jacob Geesing, Richard R. Goldsmith, Jr., Elizabeth C.

Jones, Jason Kutcher, Pratima Lele, Ludeen McCarthy-Green, and Carrie M. Ward); and Prince

George's County Sheriff Melvin High.  Am. Compl.

---

[1] For the purposes of resolving Defendants' motions to dismiss, I accept the facts alleged in
Proctor's Amended Complaint as true.  *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).  I
also take judicial notice of the state court records for the Foreclosure Action.  *See* Fed. R. Evid.
201(b).

Currently pending are Sheriff High's Motion to Dismiss or for Summary Judgment, ECF No. 26, which the parties fully briefed, ECF Nos. 26-1, 28, 29; the Lenders' Motion to Dismiss, ECF No. 31, which the parties fully briefed, ECF Nos. 31-1, 39, 43; and the Substitute Trustees' Motion to Dismiss (adopting the Lenders' arguments), ECF No. 40, which the parties fully briefed, ECF Nos. 46, 47. A hearing is not necessary. *See* Loc. R. 105.6. Because *res judicata* bars Proctor's claims against the Lenders and the Substitute Trustees, I will dismiss the claims against them without reaching the alternative grounds Defendants raise for dismissal. Proctor also fails to state a claim against Sheriff High in his official or individual capacity. Accordingly, I will dismiss the claims against him.

## Background

Proctor used her Property to secure a $126,889.98 mortgage loan and executed a Deed of Trust on the Property in favor of the original lender, Wachovia Bank, N.A. ("Wachovia"). Thereafter (presumably because Proctor fell behind on her mortgage payments, although none of the parties state the reason for the Foreclosure Action or whether Proctor was current on her mortgage payments), Wells Fargo—*not* Wachovia—appointed the Substitute Trustees pursuant to the Deed of Trust to initiate foreclosure proceedings. Am. Compl. ¶ 26. Proctor claims that Wells Fargo was not the proper holder of the Deed of Trust and therefore lacked the authority to foreclose on her Property through the Substitute Trustees. *Id.* Yet, Wells Fargo acquired Wachovia in 2010. *See* Wachovia's Institution History, Nat'l Info. Ctr., ECF No. 31-2.[2]

---

[2] I take judicial notice of Wachovia's Institution History, which appears on the Federal Reserve Board's National Information Center web page. *See* Fed. R. Evid. 201(b), 803(8)(a), and 902(5); *see also Kalos v. Centennial Sur. Assocs.*, No. CCB-12-1532, 2012 WL 6210117, at *2 (D. Md. Dec. 12, 2012) ("[A] court may take judicial notice of facts from a prior judicial proceeding when the *res judicata* defense raises no disputed issue of fact." (quoting *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000)); *Dyer v. Maryland State Bd. of Educ.*, 187 F. Supp. 3d 599,

The Substitute Trustees filed the Foreclosure Action against Proctor in the Circuit Court for Prince George's County, Am. Compl. ¶ 31, and Proctor filed counterclaims against the Substitute Trustees, which the court dismissed with prejudice. State Ct. Docket, http://casesearch.courts.state.md.us/casesearch/inquiryDetail.jis?caseId=CAEF1500209&loc=65 &detailLoc=PGV. The Property was sold through the Foreclosure Action, and the state court ratified the sale on March 22, 2016. *Id.* On September 13, 2016, the state court entered an Order of Judgment awarding possession of the Property to Fannie Mae. *Id.* Proctor filed a motion to vacate the judgment, which the court denied. *Id.* The court issued a Writ of Possession on September 21, 2016 for the Prince George's County Sheriff to serve.[3] *Id.*

At that point, when an Order of Judgment had been entered but the Foreclosure Action remained open, Proctor filed a 63-page complaint in this Court on January 13, 2017, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a), (c), (d), as well as other federal and state law claims arising from the foreclosure of her Property. ECF No. 1. She named the Lenders, Wells Fargo's Senior Vice President Michael J. Heid and Vice President Gloria Ann Hernandez, BWW Law Group, LLC ("BWW"), Sheriff Melvin High, and "DOES 1 through 15" as Defendants. *Id.* She also sought "declaratory and injunctive relief as to the planned unlawful seizure of the Plaintiff's house." *Id.* at 54.

The named Defendants noted their intent to file motions to dismiss, ECF Nos. 6, 10, 15, and I permitted Plaintiff to file an amended complaint to address the deficiencies Defendants

---

608 (D. Md. 2016) ("[E]ven at the pleading stage, the Court 'may take judicial notice of matters of public record, including court and administrative filings.'" (quoting *Fakhoury v. Great N. Ins. Co.*, No. WDQ–12–0268, 2012 WL 1554487, at *1 n.1 (D. Md. Apr. 30, 2012)), *aff'd*, 685 F. App'x 261 (4th Cir. 2017).

[3] "Sheriff Russell" later filed a return of service of the Writ of Possession. *Id.* Additional facts with regard to service of the Writ appear in the section discussing the claims against Sheriff High.

raised before Defendants filed their motions. Apr. 17, 2017 & Apr. 19, 2017 Ltr. Orders, ECF

Nos. 12, 16. I cautioned that any dismissal of Plaintiff's claims based on a ground raised in

Defendants' pre-motion conference requests would be with prejudice. Apr. 17, 2017 & Apr. 19,

2017 Ltr. Orders; May 15, 2017 Ltr. Order, ECF No. 25.

Plaintiff filed a verified Amended Complaint, ECF No. 20, removing BWW, Heid and

Hernandez as Defendants and adding the Substitute Trustees as Defendants. *See* Pl.'s Opp'n to

Lenders' Mot. ¶ 5, ECF No. 39.[4] In her Amended Complaint, Proctor also abandoned her RICO

claims. With regard to the Lenders, she alleges wrongful foreclosure and violations of the Fair

Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Maryland Consumer Debt

Collection Act ("MCDCA"), Md. Code Ann., Com. Law § 14-201 *et seq.* Am. Compl. ¶¶ 42 &

44. She also sues Wells Fargo for breach of contract and violations of the Real Estate Settlement

Procedures Act ("RESPA"), 12 U.S.C. §§ 2601–2617. Am. Compl. ¶¶ 40 & 43. She brings a

claim for slander and to quiet title against Fannie Mae. *Id.* ¶ 41. As for Sheriff High, she claims

civil rights violations. *Id.* ¶ 46. Additionally, she seeks injunctive relief against all Defendants.

*Id.* ¶ 45.

Sheriff High and the Lenders moved to dismiss, ECF Nos. 26 & 31, and the Substitute

Trustees filed a pre-motion conference request with regard to filing a motion to dismiss. ECF

No. 35. I permitted them to file a motion that adopted the grounds that the other Defendants had

raised, stating that any dismissal on those grounds would be with prejudice as Plaintiff already

---

[4] Based on Proctor's Amended Complaint and her assertions in her Opposition to the Lenders'
Motion to Dismiss, I denied the Motion to Dismiss that BWW had filed, ECF No. 33, as moot.
July 6, 2017 Ltr. Order, ECF No. 41. The Clerk shall also terminate Heid and Hernandez as
Defendants in light of the Amended Complaint and Proctor's assertions in her Opposition to the
Lenders' Motion to Dismiss.

had the opportunity to amend to address those grounds. I also permitted them to address any new grounds. June 22, 2017 Ltr. Order, ECF No. 38.

**Standard of Review**

The Lenders, Sheriff High, and the Substitute Trustees move to dismiss pursuant to Rule 12(b)(6), under which Proctor's pleadings are subject to dismissal if they "fail[ ] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).[5] A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678." *Moore v. Jordan*, No. TDC-16-1741, 2017 WL 3671167, at *4 (D. Md. Aug. 23, 2017).

Rule 12(b)(6)'s purpose "is to test the sufficiency of a [claim] and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). If an affirmative defense, such as *res judicata*, "clearly appears on the face of the [pleading]," however, the Court may rule on that defense when considering a motion to dismiss. *Kalos v. Centennial Sur. Assocs.*, No. CCB-12-

---

[5] Although Sheriff High's motion is, in the alternative, for summary judgment, and he attaches an affidavit in support of his motion ECF No. 26-2, and Proctor attaches an affidavit to her opposition, ECF No. 28-1, I will resolve it as a motion to dismiss and exclude the attachments from consideration in this ruling. *See* Fed. R. Civ. P. 12(d).

1532, 2012 WL 6210117, at *2 (D. Md. Dec. 12, 2012) (quoting *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000) (citation and quotation marks omitted)).

## Discussion

## Claims against the Lenders and the Substitute Trustees

Proctor brings various federal statutory and state tort claims against the Lenders and the Substitute Trustees. Am. Compl. ¶¶ 40–45. In response, these Defendants raise various grounds for dismissal, one of which is the affirmative defense of *res judicata*, or claim preclusion. When, as here, federal court litigants assert that a state court judgment has preclusive effect, "[the] federal court must give to [the] state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Under Maryland law, *res judicata*, or claim preclusion, provides grounds for dismissal if a defendant establishes that "(1) the present parties are the same or in privity with the parties to the earlier dispute, (2) the claim presented is identical to the one determined in the prior adjudication, and (3) there has been a final judgment on the merits." *Capel v. Countrywide Home Loans, Inc.*, No. WDQ-09-2374, 2010 WL 457534, at *3 (D. Md. Feb. 3, 2010) (citing *Anne Arundel County Bd. of Educ. v. Norville,* 887 A.2d 1029, 1037 (Md. 2005)).

*1. Same parties*

In the Foreclosure Action, Proctor was the defendant and Ward, Bierman, Geesing, Lele, Monto and Coleman ("WBGLMC"), acting as substitute trustee, was the plaintiff. Here, Proctor sues the Lenders, the Substitute Trustees, and Sheriff High (who does not assert *res judicata* and whom I will not consider for purposes of this discussion). The Lenders argue that "for the

purposes of res judicata, [they] are in privity with the Substitute Trustees" because Wells Fargo was the mortgage servicer at the time of the Foreclosure Action and Fannie Mae owned Proctor's mortgage at the time. Lenders' Reply 1–2. Proctor does not dispute that the Substitute Trustees, whom she sues in their official capacity, were parties to or in privity with the plaintiff in the state court action. Pl.'s Opp'n to Sub. Trs.' Mot. 7–9. Nor does she dispute that the owner or servicer of the mortgage would be in privity with the substitute trustees. Indeed, when a substitute trustee "prosecute[s] [a] state court foreclosure action on behalf of [a mortgage servicer], which in turn serviced the underlying mortgage on behalf of [the lender]," the servicer, lender and substitute trustee share "the same right to foreclose on the [subject] mortgage," such that "the privity component of claim preclusion is satisfied." *Jones v. HSBC Bank USA, N.A.*, 444 F. App'x 640, 644 (4th Cir. 2011) (unpublished) (noting that in *Anyanwutaku v. Fleet Mortg. Group, Inc.,* 85 F. Supp. 2d 566, 571 (D. Md. 2000), this Court found "privity, under Maryland law, between substitute trustee who filed prior foreclosure action and *successor holders* of the underlying mortgage note" (emphasis added)).

Rather, Proctor opposes the application of *res judicata* to her claims against the Lenders on the basis that Wells Fargo has not "produce[d] a single document attesting to its status as noteholder and thus it cannot establish privity with the substitute trustees." Pl.'s Opp'n to Lenders' Mot. 7. But, I "take[] judicial notice of the fact that . . . on or around March 20, 2010, Wachovia merged with Wells Fargo." *Wells Fargo Bank, Nat'l Ass'n v. KT Mech. Contractors, Inc.*, No. 11-850-AW, 2011 WL 5005994, at *1 (D. Md. Oct. 18, 2011); *see* Wachovia's Institution History, Nat'l Info. Ctr.; Fed. R. Evid. 201(b), 803(8)(a), 902(5). "As a result of the[] merger[], Wells Fargo is the successor to . . . Wachovia with respect to the loan documents evidencing the obligations of [Proctor]." *Wells Fargo*, 2011 WL 5005994, at *1. I am satisfied

that there is no plausible basis for disputing that the Foreclosure Action was between the same parties as the Substitute Trustees and the Lenders or their privies. *See Jones*, 444 F. App'x at 644; *Anyanwutaku,* 85 F. Supp. 2d at 571.

    *2. Same claims*

    Under Maryland law, courts apply the transaction test to determine whether claims are identical. *See Kent Cty. Bd. of Educ. v. Bilbrough*, 525 A.2d 232, 238 (Md. 1987). "Under the transaction test, a 'claim' includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the claim arose." *Boyd v. Bowen*, 806 A.2d 314, 325 (Md. Ct. Spec. App. 2002) (citing *FWB Bank v. Richman*, 731 A.2d 916, 928 (Md. 1999)). Notably, *res judicata* bars not only claims from the original litigation, but also other claims that could have been brought in the original litigation. *Id.* (citing *Gertz v. Anne Arundel Cty.,* 661 A.2d 1157, 1161 (Md. 1995)). This Court consistently has held that *res judicata* bars collateral attack on foreclosure judgments. *See Prudencio v. Capital One, N.A.*, No. PWG-16-2693, 2016 WL 6947016, at *3 (D. Md. Nov. 28, 2016) (concluding that the second element was satisfied because "all of Plaintiffs' present claims" of violations of the FDCPA, the RESPA, and RICO; negligence; breach of fiduciary duties; fraud and misrepresentation; civil conspiracy; and intentional infliction of emotional distress "could have been raised in the foreclosure action"); *Jones v. HSBC Bank USA, N.A.*, No. RWT 09CV2904, 2011 WL 382371, at *5 (D. Md. Feb. 3, 2011) (holding that claims for violations of the FDCPA, breach of fiduciary duty, and fraud could not be brought in this Court, as the claims could have been raised in the foreclosure proceeding), *aff'd*, 444 F. App'x 640 (4th Cir. 2011); *Anyanwutaku*, 85 F. Supp. 2d at 571 (concluding that plaintiff's claims for, *inter alia*,

illegal foreclosure, fraud and misrepresentation, and conspiracy were barred by *res judicata* as the claims concern the same transaction).

As noted, Proctor claims that the Lenders and the Substitute Trustees wrongfully foreclosed on her Property, and she seeks injunctive relief. Am. Compl. ¶¶ 44, 45. Additionally, she brings a claim for slander and to quiet title against Fannie Mae. *Id.* ¶ 41. The crux of these claims is that the Lenders did not properly hold the Deed of Trust, such that they could not appoint the Substitute Trustees to foreclose on the Property, and therefore the Foreclosure Action was litigated without authority. Additionally, contradicting her own assertion that Wells Fargo does not hold the Deed of Trust, Proctor sues Wells Fargo for breach of that contract and the Note and claims that Wells Fargo and the Substitute Trustees, in servicing the loan and initiating the Foreclosure Action, violated the FDCPA and the MCDCA, and Wells Fargo violated the RESPA. Am. Compl. ¶¶ 40, 42, 43. These claims, also, relate to Defendants' handling of her mortgage loan, culminating in the Foreclosure Action.

Thus, the state court Foreclosure Action and the present case relate to the same transaction or occurrence: the Note and Deed of Trust on the Property and the Foreclosure Action that resulted when Proctor apparently failed to make payments. Therefore, all of Proctor's present claims against the Lenders and the Substitute Trustees could have been raised in the foreclosure action. *See Prudencio*, 2016 WL 6947016, at *3 (FDCPA and RESPA claims and state tort claims could have been brought in foreclosure action); *Bullock v. Ocwen Loan Servicing, LLC*, No. PJM-14-3836, 2015 WL 5008773, at *5 (D. Md. Aug. 20, 2015) (finding that plaintiff's FDCPA and RESPA "statutory claims [we]re premised on [plaintiff's] contention that the Defendants lacked the legal authority to enforce the note and deed of trust" and therefore "the statutory claims ar[o]se out of the same series of transactions" as the state foreclosure action

and were barred under *res judicata*); *McCreary v. Benificial Mortg. Co. of Md.*, No. AW-11-CV-01674, 2011 WL 4985437, at *4 (D. Md. Oct. 18, 2011) (dismissing on *res judicata* grounds plaintiff's claims, *inter alia*, for fraud, fraudulent misrepresentation, and intentional infliction of emotional distress, as "Plaintiff had a fair opportunity to present claims against Defendants during the prior foreclosure proceedings"); *Jones*, 2011 WL 382371, at *5 (FDCPA claim and state tort claims could have been brought in foreclosure action; *Anyanwutaku*, 85 F. Supp. 2d at 571 (illegal foreclosure claim and state tort claims could have been brought in state court foreclosure action). Thus, Defendants have satisfied the second element of claim preclusion.

*3. Final judgment on the merits*

The Property was sold through the Foreclosure Action, the state court ratified the sale on March 22, 2016, and the court entered an order of judgment on September 13, 2016, awarding possession to Fannie Mae. The ratification of sale constitutes a final judgment for preclusion purposes. *See McGhee v. JP Morgan Chase Bank, N.A.*, No. DKC-12-3072, 2013 WL 4495797, at *6 (D. Md. Aug. 20, 2013) ("The important ruling in foreclosure cases is the circuit court's ratification of the foreclosure sale. 'When a state court finalizes a foreclosure after the "plaintiff was given an opportunity to raise all objections to the foreclosure sale of [a] property,[''] that adjudication is a final judgment on the merits.'" (quoting *Capel v. Countrywide Home Loans*, Nos. WDQ-09-2374, WDQ-09-2439, 2010 WL 457534, at *4 (D. Md. Feb. 3, 2010))); *Graves v. OneWest Bank, FSB*, No. PWG-14-1995, 2015 WL 2452418, at *6 (D. Md. May 20, 2015), *recons. denied*, 2015 WL 6769115 (D. Md. Nov. 2, 2015), *aff'd*, 653 F. App'x 788 (4th Cir. 2016). Therefore, there was a final judgment on the merits.

Because all three elements of *res judicata* have been met, the claims pending in this Court against the Lenders and the Substitute Trustees are precluded and must be dismissed with prejudice.

## Civil Rights Claims against Sheriff High

Proctor sues Sheriff High "in his individual capacity as well as his official capacity as Sheriff and as employer/supervisor of certain unnamed deputies." Am. Compl. ¶ 14. She claims:

> 36. On or about January 3, 2017, Defendant Sheriff High, *or a deputy sheriff unknown to Plaintiff* and 10 unidentified men invaded the Subject Property and terrorized Plaintiff's tenants living at said property who called Plaintiff. Plaintiff was shocked, aggravated, embarrassed and greatly stressed by the conduct of Defendant Sheriff High *and/or his deputy and posse* who threatened to evict Plaintiff's tenants and throw their things outside. It was only after Plaintiff had an advisor to speak with Defendant Sheriff High and/or his deputy which advisor asked for a warrant under the 4th Amendment that the Defendant Sheriff *and/or his deputy* agreed to leave but promised to come back in two weeks.

> 37. At the time the Defendant Sheriff and his posse invaded Plaintiff's property, they did not have a warrant nor a Writ of Possession nor any other legal authority to evict Plaintiff's tenants or otherwise interfere with Plaintiff's property rights. In fact, the Attorney General in a letter to the Court stated that no Writ of Possession or other warrant at been issued to Sheriff High. Plaintiff asks the Court to take judicial notice of said letter which appears among the papers of the above-entitled and numbered cause and which is incorporated herein by reference for all purposes.[6]

> 38. Sometime in March 2017, Defendant Sheriff High *and/or his deputy* returned to Plaintiff's property and so terrorized her tenants that the tenants abandoned the property and the property remains uninhabited. . . .

> . . .

> 46. REDRESS FOR VIOLATIONS OF CIVIL RIGHTS

> A. The facts alleged in the Factual Background paragraphs 37-39 apply specifically to Sheriff High individually and in his official capacity as Sheriff of Prince George's County, Maryland and the unidentified deputies and the 10 men

---

[6] This letter is not a part of the record in this case and has not been made available to me. Therefore, I am unable to take judicial notice of it as Proctor requests, as it is not possible to evaluate whether the requirements of Fed. R. Evid. 201 could be met.

acting in concert with Defendant Sheriff High and/or at his instigation and under his supervision.

        B. During all times relevant to this lawsuit, Sheriff High and those acting in concert with him and/or under his supervision were acting under color of state law, and those actions were pursuant to the policies and procedures of the Prince George's County Sheriff Office.

        C. Defendant Sheriff High and those acting in concert with him and/or under his Supervision deprived Plaintiff of her rights under the 4th, 5th, and 14th Amendments to the United States Constitutions in the manner set forth in the Factual Background above and to redress such violations Plaintiff brings this suit and asks for an award of damages consistent with law and equity with punitive and injunctive relief as warranted to deter future wrongful conduct by Sheriff High and others.

Notably, the State Court Docket, of which I may take judicial notice pursuant to Fed. R. Evid. 201(b), shows that, as of September 2016, the state court had entered an Order of Judgment and issued a Writ of Possession for the Property. State Ct. Docket. Thus, contrary to Proctor's clams, the "unnamed deputies" were not without authority to serve the Writ of Possession in January or March 2017. *See id.*

## *Official Capacity*

Sheriff High asserts that he "enjoys Eleventh Amendment immunity in his official capacity and is not a 'person' for purposes of 42 U.S.C. § 1983," and therefore cannot be sued in his official capacity under the statute. High's Mem. 1. He focuses on his Eleventh Amendment argument, *see id.* at 5, but even though this "argument would appear to implicate this Court's jurisdiction, the Court must turn first to the statutory argument that the [Sheriff] is not a 'person' within the meaning of § 1983." *Lawson v. Green*, No. TDC-16-2946, 2017 WL 3638431, at *4 (D. Md. Aug. 23, 2017) (parenthetical omitted) (citing *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens,* 529 U.S. 765, 779 (2000); *Calderon v. Ashmus*, 523 U.S. 740, 745 n.2 (1998); *Power v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000)).

To state a claim under § 1983, a plaintiff must name a defendant who qualifies as a "person" for purposes of § 1983. *See Bixler v. Harris*, No. WDQ-12-1650, 2013 WL 2422892, at *5 (D. Md. June 3, 2013) ("Section 1983 provides a remedy against any *person* who, acting under color of law, deprives another of constitutional rights." (emphasis added) (citing 42 U.S.C. § 1983)). A suit against a county official in his official capacity "serve[s] as [a] suit[] against the County." *Huggins v. Prince George's Cty., Md.*, 683 F.3d 525, 532 (4th Cir. 2012). Similarly, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Prince George's County is a local unit of government amenable to suit and qualifies as a "person" for purposes of § 1983. *See Peterson v. Prince George's Cty.*, No. PWG-16-1947, 2017 WL 2666109, at *2 (D. Md. June 21, 2017) ("The County, as a unit of local government, is a 'person [ ]' subject to suit under 42 U.S.C. § 1983, as stated in *Monell v. Department of Social Services*, 436 U.S. 658, 690–91 (1978)." (citing *DiPino v. Davis*, 729 A.2d 354, 368 (Md. 1999)). By logical extension, a county official in his official capacity also is a "person" for purposes of § 1983. *See id.*; *see also Huggins*, 683 F.3d at 532. A state, however, is not "a 'person' within the meaning of 42 U.S.C. § 1983." *Kelly v. Bishop*, No. RDB-16-3668, 2017 WL 2506169, at *4 (D. Md. June 9, 2017) (citing *Will*, 491 U.S. at 64–65 & 70–71). Therefore, a State official in his official capacity is not subject to a § 1983 action. *See Will*, 491 U.S. at 64–65 & 70–71. Thus, whether Sheriff High, sued in his official capacity, is a "person" for purposes of § 1983 depends on whether he is a State or county official.

Sheriff High insists that he is a State official. High's Mem. 5. Certainly, under Maryland law, a sheriff, such as Sheriff High, is a State official. *Savage v. Gahler*, No. JKB-16-1219,

2016 WL 6476283, at *6 n.5 (D. Md. Nov. 2, 2016) (citing Md. Const. art. IV, § 44; *Rucker v. Harford Cty.*, 558 A.2d 399, 402 (Md. 1989)). And, based on this state law authority, this Court frequently finds that Eleventh Amendment immunity applies to suits against a Sheriff. *See, e.g.*, *id.* ("Maryland law provides that a sheriff is a State official."); *Hicks v. Ward*, No. PX 17-258, 2017 WL 4786616, at *4 (D. Md. Oct. 24, 2017) ("It is well settled in Maryland that county sheriffs are state officials."); *Sweitzer v. McGuinn*, No. GLR-17-1741, 2017 WL 4516711, at *4 (D. Md. Oct. 10, 2017) ("As a matter of Maryland law, county sheriffs are officials and/or employees of the State, not the county."). But, whether a county sheriff is "to be regarded as [a] State or local government employee[], for purposes of the Eleventh Amendment or 42 U.S.C. § 1983, [is a] federal law issue[]." *Rucker v. Harford Cty.*, 558 A.2d 399, 401 (Md. 1989); *see also Clea v. Mayor & City Council of Baltimore*, 541 A.2d 1303, 1307 (Md. 1988) ("[W]ith regard to federal law liability under 42 U.S.C. § 1983, the state law classification of [a state agency or official] would not be decisive, and [a state agency or official] might well be regarded as a local government agency [or official]."), *superseded by statute on other grounds as stated in Houghton v. Forrest*, 989 A.2d 223, 230 (Md. 2010); *see also Hector v. Weglein*, 558 F. Supp. 194, 198 (D. Md. 1982) (denying Baltimore City Police Department and Police Commissioner's motion to dismiss based on Eleventh Amendment immunity because "the City exercises . . . substantial control over the day-to-day activities and policies of the Department," such that these defendants could not succeed in their argument that they were "state and not city connected").

To determine whether a government official is a local government official, as opposed to a State official, for purposes of § 1983, the court considers whether he is acting as a "final policymaker[] for the local government in a particular area, or on a particular issue." *McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 786 (1997). This is a question of state law. *Id.* In this case,,

the particular area or issue of concern is the manner of execution of the Writ of Possession. *See* Am. Compl. ¶¶ 14, 36–38, 46(B). Although the court's "inquiry is dependent on an analysis of state law," state law cannot resolve the issue by "simply labeling as a state official an official who clearly makes county policy." *McMillian*, 520 U.S. at 786. Yet the court's "understanding of the actual function of a government official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law." *Id.*; *see also Ram Ditta v. Md. Nat'l Capital Park & Planning Comm'n*, 822 F.2d 456, 457–58 (4th Cir. 1987) (identifying four factors for courts to consider in determining whether an entity or official is a State officer for purposes of Eleventh Amendment immunity, namely (1) "whether the state treasury will be responsible for paying any judgment that might be awarded"[7]; (2) "whether the entity exercises a significant degree of autonomy from the state"; (3) "whether [the entity] is involved with local versus statewide concerns"; and (4) "how [the entity] is treated as a matter of state law"); *Lane v. Anderson*, 660 F. App'x 185, 195–96 (4th Cir. 2016) (reversing and remanding district court ruling that sheriff was State officer entitled to Eleventh Amendment immunity, because ruling was based solely "on the fact that sheriffs are elected state officials, are defined as 'state personnel' for the purposes of the Maryland Tort Claims Act, are granted authority by state law to hire deputy sheriffs, and are state officials, not local government officials" and did not apply four-factor test described in *Ram Ditta*).

In *Rucker v. Harford County*, which I find instructive, David Rucker and his father filed a § 1983 action in this Court after David, "a civil bystander, was struck by a bullet." 558 A.2d at

---

[7] The first factor, "a judgment's effect on the state treasury," was once weighted more heavily than the other three. *Lane v. Anderson*, 660 F. App'x 185, 195 (4th Cir. 2016). It is "still 'of considerable importance,'" but the Fourth Circuit has concluded that it "'does not deserve dispositive preeminence.'" *Id.* (quoting *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 137 n.4 (4th Cir. 2014) (internal quotation marks and citations omitted)).

400.  The Maryland Court of Appeals addressed two questions that this Court certified to it: (1) whether the Harford County Sheriff and Deputy Sheriffs are State or county employees, and (2) whether the State or county "is obligated to fund the expenses associated with claims for liability involving the Harford County Sheriff, the Deputy Sheriffs or the Sheriff's Office." *Id.* With regard to the first question, the state court concluded that, as a matter of Maryland law, the Sheriff and Deputy Sheriffs of Harford County are officials and/or employees of the State of Maryland rather than of Harford County," even though "[t]here is a degree of local control over the operation of the sheriff's office in each county, which results from the provision for local funding."  402, 405. The court reasoned that the sheriff is "a State constitutional officer whose duties are subject to control by the General Assembly." *Id*. at 402.  Specifically, "the elective office of sheriff has been provided for in Maryland's Constitutions since 1776," and Md. Const. art. IV, § 44 "mandates the election of a sheriff in each county and in Baltimore City[,] . . . establishes the term of office for sheriff and imposes age and residency requirements on those seeking the office," and "provides that the Governor shall appoint a replacement if a sheriff dies, resigns, or cannot serve out his term." *Id*. at 404.  Further, State law controls "the power and authority exercised by sheriffs." *Id*.  Significantly, the court observed that "some of the duties prescribed for sheriffs," such as "attend[ing] the court or perform[ing] services for the court," including serving papers and serving and returning process, "are statewide in scope rather than confined to the locality in which they generally operate." *Id*. at 404–05 (quoting Md. Code Ann., Cts. & Jud. Proc. § 2-404; citing *id*. § 2-301; Md. Code Ann. art. 75, § 85).  But the court noted that its "conclusion does not mean that, for some purposes and in some contexts, a sheriff may not be treated as a local government employee." *Id.* at 406.  As for the second question, the court concluded that "under Maryland law, Harford County is generally not obliged to fund any of the

expenses associated with tort liability claims against the Harford County Sheriff, Deputy Sheriffs, or the Sheriff's Office," *id.* at 409, whereas "the State bears financial responsibility for judgments, settlements, and defense costs in accordance with the terms, conditions, and limitations of the Tort Claims Act" (insofar as the Maryland Tort Claims Act applied to the alleged tortious acts), *id*. at 412.

*Soldad v. Cook County, Illinois*, 506 U.S. 56 (1992), on which Proctor relies, in inapposite. There, Cook County deputy sheriffs were present for (but did not assist in), and did not act to stop, an unlawful eviction in which Edward Soldad's mobile home was forcibly removed from a mobile home park by the park's owner. *Id.* at 57–58. After the home was returned "badly damaged," Soldad brought a § 1983 action against the park owners and the deputy sheriffs for violating his property rights under the Fourth and Fourteenth Amendments. *Id.* at 59. The district court granted summary judgment on the basis that there was no evidence of conspiracy and therefore no state action. *Id.* The Seventh Circuit disagreed about the evidence of a conspiracy, but held that the removal of the mobile home was not a violation of Soldad's property rights. *Id.* at 59–60. The Supreme Court reversed, concluding that the seizure and removal of the mobile home from the park was indeed a seizure within the meaning of the Fourth Amendment. *Id.* at 72. The Supreme Court did not address whether the deputy sheriffs were state or county officials. Moreover, the identity of deputy sheriffs of Cook County, *Illinois* under one set of circumstances has no bearing on whether a sheriff in Prince George's County, *Maryland*, under another set of circumstances, is a state or county official, because this turns on the law of the particular state. *See McMillian*, 520 U.S. at 786. Thus, whether deputy sheriffs in Cook County, Illinois are local or state officials under Illinois law is completely irrelevant to resolution of the same question as it relates to a sheriff or sheriff's deputies under Maryland law.

As noted, the question I must resolve is whether Sheriff High acted as a State or county official when his deputies executed the Writ of Possession on Proctor's Property. Serving a writ of possession is a function that a sheriff undertakes at the direction of the court.[8] *See* Md. R. 2-647 ("Upon the written request of the holder of a judgment awarding possession of property, the clerk shall issue a writ directing the sheriff to place that party in possession of the property."); *Bell v. Driscoll*, No. 1018, Sept. Term 2016, 2017 WL 6604251, at *3 (Md. Ct. Spec. App. Dec. 27, 2017) (citing Md. R. 2-647). The Maryland Court of Appeals stated that a sheriff's functions when he or she is "perform[ing] services for the court," including serving papers and process,

---

[8] For this reason, Proctor's claims against Sheriff High also are barred by quasi-judicial immunity, s*ee Okere v. High*, No. DKC 16-2152, 2016 WL 7405434, at *2 (D. Md. Dec. 22, 2016), *aff'd*, 684 F. App'x 290 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 210 (2017), and if Sheriff High had not raised the statutory question of whether he qualifies as a "person" for purposes of § 1983, I could have dismissed the claims against him on the basis of quasi-judicial immunity, *sua sponte*. *See Smith v. Nationstar Mortg., LLC*, No. ELH-15-3807, 2015 WL 9581802, at *4 (D. Md. Dec. 29, 2015) ("Because [judicial] immunity precludes plaintiffs[*] recovery, sua sponte dismissal of plaintiff's claims against the judges is appropriate."). In *Okere*, Judge Chasanow dismissed a claim against Sheriff High that was based on actions he took executing a writ of possession pursuant to a state court order, reasoning:

> Absolute quasi-judicial immunity extends to non-judicial officers "performing tasks so integral or intertwined with the judicial process that those persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). The basis for affording non-judicial officials absolute immunity is to avoid the "danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly [would] vent their wrath on clerks, court reporters, and other judicial adjuncts." *Sindram v. Suda*, 986 F.2d 1459, 1461 (D.C. Cir. 1993) (alteration in original) (quoting *Dellenbach v. Letsinger*, 889 F.2d 755, 763 (7th Cir. 1989)). Courts have therefore extended absolute immunity to protect, among others, clerks of court, law enforcement officers, and others who enforce court orders. *See, e.g.*, *Foster v. Walsh*, 864 F.2d 416, 417-18 (6th Cir. 1988) (holding the clerk of court to be absolutely immune for issuing an erroneous warrant pursuant to the court's order); *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238-39 (7th Cir. 1986) ("[Police officers, sheriffs, and other court officers who act in reliance on a facially valid court order are entitled to quasi-judicial immunity from suit.").

*Id. (quoting Kendrick v. Cavanaugh*, No. CCB-10-2207, 2011 WL 2837910, at *4 (D. Md. July 14, 2011)).

"are statewide in scope." *Rucker*, 558 A.2d at 404–05. The court also noted that the State controls the duties of county sheriffs, as well as the "power and authority" they exercise. *Id.* at 404. Thus, it was the court, and not Sheriff High or his deputies, acting as the final policymaker with regard to serving writs and eviction notices. *See McMillian*, 520 U.S. at 786. And, insofar as a sheriff could be liable in his official capacity for his tortious acts, it would be the State, not the county, that bore financial responsibility for any costs, judgment or settlement. *See id.* at 412. Therefore, with regard to his role in his official capacity in the execution of the Writ of Possession on Proctor's Property, Sheriff High was a State official. *See id.* at 404–05, 412. Accordingly, he is not a "person" subject to suit under § 1983. *See Will*, 491 U.S. at 71; *Kelly*, 2017 WL 2506169, at *4. I will dismiss the claims against him in his official capacity on this basis without reaching his Eleventh Amendment argument. *See Vt. Agency of Nat. Res.*, 529 U.S. at 779; *Lawson*, 2017 WL 3638431, at *4.

<u>Individual Capacity</u>

Section 1983 requires a showing of personal fault, whether based upon the defendant's own conduct or another's conduct in executing the defendant's policies or customs. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *West v. Atkins*, 815 F.2d 993, 996 (4th Cir. 1987), *rev'd on other grounds*, 487 U.S. 42 (1988) (no allegation of personal involvement relevant to the claimed deprivation); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (in order for an individual defendant to be held liable pursuant to § 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights") (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md. 1971), *aff'd*, 451 F.2d 1011 (4th Cir. 1971)). Moreover, an individual cannot be held liable under § 1983 under a

theory of respondeat superior.[9]  *See Monell*, 436 U.S. at 690; *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983).

According to Sheriff High, he "had no personal involvement in the occurrences complained of." High's Mem. 6.[10]  Indeed, Proctor alleges (in conclusory fashion) that Sheriff High *or* a deputy sheriff entered her Property without lawful authority and "terrorized" her tenants.  She does not allege any facts plausibly showing that the Sheriff himself took any specific action.  Without so much as an affirmative assertion that Sheriff High was present for either the January or March 2017 incident, Proctor's claims are conclusory and insufficient to state a claim against Sheriff High based on any personal involvement. *See Johnson v. Dore,* No. RWT-12-3394, 2013 WL 5335626, at *4 (D. Md. Sept. 20, 2013) (granting Rule 12(b)(6) motion to dismiss claims as to two defendants because the "Complaint d[id] not include any allegations concerning [those defendants] to support a plausible claim against them" but rather "repeatedly refer generally to 'Defendants,' without identifying specific Defendants or conduct"); *Ciralsky v.*

---

[9] Respondeat superior is a legal doctrine which holds that in some circumstances an employer is responsible for the actions of employees performed within the course of their employment.

[10] Proctor argues that I should not consider this argument, or Sheriff High's argument regarding supervisor liability, because in his pre-motion conference request, Defendant "did not raise the issue of his not having any personal involvement in the attempts to evict [her] tenants and he did not raise the issue of his supervisory role, if any, in those unlawful acts." Pl.'s Opp'n 8.  Proctor is wrong.  In his initial pre-motion conference request, in response to which Proctor had (and took) the opportunity to file an Amended Complaint, Sheriff High's counsel stated that he was "unable to identify any specific allegations related to Sheriff High or any of his deputies." Pre-Mot. Ltr. 1, ECF No. 6.  He asserted:

> In his individual capacity, Ms. Proctor would have to plead facts establishing the elements of supervisory liability, *see Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994), which she has not attempted to do. Nor does Ms. Proctor allege that Sheriff High had any direct involvement in anything that she complains of.

*Id.* at 2. And, in his May 15, 2017 letter, he asked to supplement Sheriff High's motion to dismiss, contending that with regard to Sheriff High "individually, the Amended Complaint fails to state a claim for supervisory liability under *Shaw v. Stroud*." ECF No. 23.

*C.I.A.,* No. 10-911, 2010 WL 4724279, at *4, *9 (E.D. Va. Nov. 15, 2010) (dismissing *Bivens* claims because, *inter alia,* plaintiff only made "a vague claim" about one individual defendant and otherwise "fail[ed] to identify any specific actions of individual defendants"), *aff'd sub nom. Ciralsky v. Tenet,* 459 F. App'x 262 (4th Cir. 2011); *Asafo-Adjei v. First Sav. Mortg. Corp.,* No. RWT-09-2184, 2010 WL 730365, at *5 (D. Md. Feb. 25, 2010) (dismissing claim for intentional infliction of emotional distress where, *inter alia,* plaintiff "fail[ed] to identify which Defendants caused his emotional distress"); *Ridgway v. NovaStar Mortg. Inc.,* No. RDB-09-1814, 2009 WL 5217034, at *4 (D. Md. Dec. 30, 2009) (dismissing fraud claim because "Plaintiffs . . . fail to identify which Defendants committed the alleged fraud, [and] do not allege almost any other details . . . . that would shed light onto their claim").

Sheriff High also contends that the "the Amended Complaint fails to state a claim for supervisor liability." High's Mem. 6. In a § 1983 action, liability of supervisory officials "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter,* 737 F.2d 368, 372 (4th Cir. 1984)). To establish supervisory liability under § 1983, a plaintiff must show that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Here, Proctor does not allege that Sheriff High had any knowledge of his deputies' conduct. Nor, if it is assumed that he had such knowledge, does she allege how Sheriff High responded to the conduct or plausibly allege a link between the two. Consequently, she fails to state a claim for supervisor liability under § 1983 claim against Sheriff High in his individual capacity. *See Shaw*, 13 F.3d at 799; *Staten v. Batts*, No. CCB-15-599, 2015 WL 4984858, at *3 (D. Md. Aug. 17, 2015) (holding that plaintiff's "general and conclusory assertions" that police commissioner approved all department action and was "responsible for the Baltimore City Police and their actions" did "not provide a basis for finding supervisor liability"); *Coleman v. Comm'r of Div. of Corr.*, No. ELH-13-474, 2014 WL 2547787, at *4 (D. Md. June 4, 2014) ("[C]onclusory statements concerning [a] defendant's administrative responsibilities are insufficient to suggest personal involvement, so as to confer culpability [as a supervisor]. . . ."); *Chen v. Baker*, No. PWG-13-2564, 2014 WL 6835732, at *6 (D. Md. Dec. 2, 2014) (dismissing claim where plaintiff failed to allege "personal knowledge of and involvement" in purported constitutional rights violations (quoting *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985)); *see also Evans v. Chalmers,* 703 F.3d 636, 661 (4th Cir. 2012) (stating that plaintiff must "identify how 'each [supervisory] defendant, through the official's own individual actions, has violated the Constitution,' to ensure that the serious burdens of defending against this sort of lawsuit are visited upon a departmental supervisor only when the complaint 'plausibly suggest[s]' that the supervisor engaged in 'his or her own misconduct'" (quoting *Iqbal,* 556 U.S. at 676, 677, 681)).

For all of the above reasons, the claims against Sheriff High and his deputies are dismissed. As noted, Proctor amended her Complaint after Sheriff High filed his letter request to file a motion to dismiss, in which he identified Proctor's pleading deficiencies and provided a

citation to *Shaw*, 13 F.3d at 799, a Fourth Circuit case that states the elements of supervisor liability.  Pre-Mot. Ltr. 2. Despite that guidance, Proctor failed to cure her pleading deficiencies. Thus, considering Proctor's failure to state a claim despite the helpful input she received, dismissal with prejudice is appropriate. *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013); *see also Adams v. Sw. Va. Reg'l Jail Auth.*, 524 F. App'x 899, 900 (4th Cir. 2013).  Moreover, given the legal deficiencies noted above with regard to the claims against all Defendants, further amendment would be futile.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting that reasons to deny leave to amend include, *inter alia*, "repeated failure to cure deficiencies by amendments previously allowed" and "futility of amendment").

Thus, Proctor's Amended Complaint will be dismissed in its entirety.  A separate order will issue.


Date: <u>January 25, 2018</u>                        <u>            /S/            </u>
                                                                     Paul W. Grimm
                                                                     United States District Judge


lyb